UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE APPLICATION OF VENEQUIP, S.A. | * | MISC. ACTION NO. 21-2090 |
| | * | |
| | * | SECTION: "D"(1) |
| | * | |
| | * | JUDGE WENDY B. VITTER |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| *********************************** | * | |

ORDER AND REASONS

Before the Court is the Motion to Compel Discovery filed by Venequip, S.A. ("Venequip"). (Rec. Doc. 9) and the Motion to Vacate this Court's §1782 Order, to Quash Subpoenas, and for Protective Order filed by Louisiana Machinery Company, L.L.C. D/B/A LMC or Louisiana Rents ("LMC") (Rec. Doc. 13). Because LMC's connection to the foreign dispute is tangential at best and because Venequip can obtain most if not all of the information it seeks without burdening LMC, the court finds that it would be unduly burdensome to require LMC to conduct any further searches for responsive documents. Venequip's Motion to Compel is DENIED and LMC's Motion to Quash is GRANTED.[1]

Background

This matter came before the court on an application for an order permitting Venequip to issue subpoenas to LMC for use in litigation and/or conciliation proceedings in Switzerland pursuant to 28 U.S.C. § 1782(a). The dispute in the Swiss proceedings is between Venequip and Caterpillar S.A.R..L. ("Swiss Cat"), a Swiss entity owned and controlled by Caterpillar, Inc. ("Cat Parent"). Venequip distributed, sold, and serviced Caterpillar equipment in Venezuela pursuant to two written agreements between itself and Swiss Cat. These agreements require that they will be

---

[1] LMC's alternative requests for relief—that the §1782 order be vacated or a protective order be issued—are moot.

1

construed according to Swiss law and that any dispute arising out of or related to them will be submitted to the Swiss courts. Rec. Doc. 1-4, at 4.

Venequip alleges that it was always treated and held out as Swiss Cat's exclusive distributor in Venezuela. Yet as the years went on, Venequip alleges that Swiss Cat acted in bad faith and frustrated the purpose of their agreements by overcharging Venequip for equipment that it was selling to other dealers for substantially less, facilitating the sale of equipment and parts by other dealers in Venezuela, failing to pay all "invasion fees" due by Swiss Cat for sales in Venezuela by other dealers, and preventing Venequip from servicing legacy Caterpillar equipment in Venezuela by blacklisting Venequip and prohibiting dealers from selling parts to it. Venequip alleges that LMC is one of the "other dealers" that sold equipment in Venezuela.

Venequip's application for an order to issue subpoenas was filed on an ex parte basis. The court granted the application, finding that the statutory requirements had been met and the discretionary factors weighed in favor of granting the application. The court noted, however, that it had some concerns about the scope of the subpoena for documents and made clear that the application was granted without prejudice to LMC's ability to challenge the subpoenas on any basis, including with regard to the discretionary factors.

Venequip served the subpoena for documents and the subpoena for the corporate deposition of LMC in November 2021 with a return date of January 9, 2022. The subpoena includes requests for documents and communications regarding:[2]

1. Agreements between LMC and Swiss Cat, Cat Parent, and any companies owned or controlled by Cat Parent.

2. Agreements regarding sales by LMC directly or through a third party into Latin America.

---

[2] The requests below correspond to the numbered requests in the subpoena, but the description of the request has been summarized for brevity.

3.  Sales by LMC directly or through a third party into Latin America.

4.  Policies and procedures applicable to such sales.

5.  Policies and practices applicable to sales by any dealer from outside Venezuela directly or indirectly into Latin America.

6.  Sales of Cat products made by any dealer into Venezuela other than by Venequip.

7.  Sales made by LMC into Venezuela, including documents showing the type of equipment, serial number, service, cost, price, and date of sale.

8.  Venequip, including regarding payment of (or failure to pay) Invasion Fees, sales of equipment or parts to Venequip, and Venequip's costs/sales/customers/market share.

9.  Practices regarding Cat discounts and pricing to LMC for sales made into Venezuela.

10. Payment of amounts due to Venequip.

11. Practices, policies, and/or reporting to the Cat companies of sales of equipment, machinery, or parts where the destination is other than the United States.

12. Nature of the relationship between LMC and Cat Parent.

13. Sales by Cat Parent to Venequip for higher or different prices than the same equipment and parts sold by Cat Parent to other dealers.

14. Invasion fees payable to Venequip for sales into Venezuela by LMC or other dealers.

15. Fees payable to LMC for sales in Louisiana by Dealers other than LMC.

16. Reports of fees payable to Venequip for sales into Venezuela.

17. Cost and/or pricing differences among or between any of the dealers.

18. Not doing business with Venequip.

19. Cat Parent's approval of dealers other than Venequip to sell into Venezuela.

20. The existence and/or purpose of LMC's international sales department.

21. Lists of LMC's customers in Venezuela.

22. Existence of a LMC Sales Representative to oversee or communicate with the Venezuelan market.

23. Offers or actual sales of equipment, machinery, engines, or services by LMC to Petroleos de Venezuela ("PdVSA") or its affiliates.

24. Offers or actual sales of equipment etc. by LMC to any entity owned or controlled by the Venezuelan government.

25. Offers or actual sales of equipment etc. by LMC to any private entity located in Venezuela.

26. Naming LMC as a Cat authorized sales representative for Venezuela addressed to PdVSA.

27. Meetings with any Venezuelan official regarding the sale of Cat equipment or parts.

28. Sales by LMC in Venezuela, including item or service sold, serial number, etc.

According to Venequip, this information is relevant to its allegations against Swiss Cat. Venequip submits that much of this information is accessible through a database accessible to Cat dealers (the "SIS Database"). Of note, Venequip has filed applications to serve nearly identical subpoenas on Cat Parent and at least 6 other Cat dealers in the United States.[3]

LMC served responses and objections to the subpoenas on December 13, 2021. The parties met and conferred by telephone on December 20, 2021, at which time Venequip offered to limit the time period of its requests from 17 to 10 years and to limit the geographic scope from "Latin America" to "Venezuela." In an email dated January 14, 2022, LMC objected to Venequip being entitled to any discovery under §1782.[4]  It reported that it had searched its database for the two

---

[3] The §1782 applications are also nearly identical. LMC points how each application with regard to another Cat dealer states "Further, by pure coincidence, Venequip discovered that [fill in dealer name] was selling into its territory when Venequip began receiving numerous requests by users of CAT equipment in Venezuela to repair and service CAT equipment that Venequip had not sold. Some of the equipment and parts sold into Venezuela appear to have been sold by [fill in dealer name]." (Rec. Doc. 13-1, at 13).
[4] LMC's general objections included its position that Venequip was not entitled to issuance of a §1782 subpoena, but apparently the parties' conference had focused on narrowing the scope of the subpoena.

serial numbers that Venequip had provided in an earlier email and determined that the equipment was sold to customers in Louisiana. It questioned whether Venequip had any other serial numbers for equipment it contends LMC sold into Venezuela. It agreed that if Venequip provided reasonable search criteria and a reasonable time frame, it would search its records to determine whether it had sold any equipment to Venezuela.

Venequip responded the same day, "Your client knows whether and what it sold to Venezuela." It insisted that LMC must confirm what it has and what it does not have. It threatened a motion to compel. Venequip followed up again on January 20, 2022, and sent a list of "initial" search terms and a list of serial numbers for equipment sold into Venezuela.[5]

Venequip and LMC conferred again by phone on January 24, 2022, and Venequip agreed to provide LMC with additional time to determine whether it had the capability to run searches of the preliminary terms and serial numbers. Venequip sent additional search terms on January 26, 2022.

On February 2, 2022, LMC sent Venequip an email objecting to the search terms, but reporting that it had searched all of its customer information files from 2010 to present for "Venezuela" and "Venezuelan," which resulted in 0 files. It also explained that despite having to manually enter the 3,201, serial numbers in order to search for them, it searched its database from 2010 to present for each of the numbers, which resulted in 0 records for any sale of equipment or parts by LMC to a customer in Venezuela. It complained that Venequip was wrongfully targeting it because LMC has no knowledge or record of having sold any equipment or parts to customers in Venezuela.

---

[5] This list of equipment was serviced by Venequip in Venezuela, but had not been sold by Venequip. It believes, therefore, that other dealers sold the equipment into Venezuela.

Venequip sought additional information from LMC about its searches. But the parties had reached an impasse. Venequip filed the present motion to compel. It argues that the court properly found the §1782 factors have been met. It further argues that LMC's objections to the scope of the subpoenas are inapposite or have been addressed. It insists that even if the discovery sought is also in the possession of Cat Parent or other Cat dealers, that does not preclude the subpoenas. It submits that it has shortened the temporal scope to ten years and limited the geographic scope from Latin American to Venezuela. Further, it submits that it has remedied LMC's objection that "any dealer" and "sales . . . through a third party" are vague by supplying the list of serial numbers. Venequip asks this court to order LMC to:

1. Run the serial numbers and search terms[6] in the SIS Database and "other electronic and paper caches of discovery" and produce the results.

2. Produce the other discovery requested, including (for the period of January 1, 2011, through present):

    a. Documents and communications regarding Venequip (including blacklisting of Venequip),

    b. the Agreements,

    c. out-of-territory sales into Venequip's territory,

---

[6] Based on the email correspondence between the parties, this is the list of search terms: Venezuel!, "Caterpillar Export Services," Venequip, Export!, Exporter Code, U.S. Customs, PdVSA, Petroleum Logistics, Havan Chang, Redmond Ventures, Yakima Trading, Ameritraders, RH International, Henri Pitier, ICTS, Southern Procurement Services, Ventex, Stang Industrial, Caracas, Maracaibo, Invasion fee, Tier III or Tier 3, Tier IV or Tier 4, CITGO, Bariven, CVG Internacional, Teknik Trading LLC, Urantia Suministros LLC, Petroleum Logistics Services Corp., G&B Global Group, Tradequip Service & Marine, Vertix Instrumentos, Southern Procurement Services, Inc., Stang Industrial Products, Ventex Drill Corp., Norvex Industrial Co., Marcos Vargas, M&J International Purchasing Co. Inc., William Slaid, MJheabyequipment.com, Depco Power Systems, Repuestos y Servicos Tecnicos Industriales, C.A. (RESTINCA), Doral Equipment Parts, C.A., Comania Anonima, S.A., Sociedad Anonima, Franz Muller, VMC, Bellosta. Rec. Doc. 9-12, at 1, 4.

      d.   Cat policies applicable to out-of-territory sales (including its policies with respect to resellers and purchasing agents),

      e.   Discounts and pricing offered by Swiss Cat to out-of-territory Cat dealers,

      f.   Invasion and other fees applicable to those out-of-territory sales.

3.   Produce a corporate witness for deposition

LMC filed a combined opposition to the motion to compel and motion to vacate the order authorizing the subpoenas. It argues that the order issuing § 1782 subpoenas should be vacated because Venequip could obtain the discovery through the Swiss Proceeding, because Venequip has not established that the Swiss tribunal would be receptive to the evidence, because Venequip is attempting to sidestep those discovery rules, and because the requests are unduly intrusive and burdensome. It argues that the discovery is not relevant or proportional to the needs of the Swiss Proceeding. It submits that Cat Parent has agreed to make the discovery available in the Swiss Proceeding, citing a declaration submitted by a Cat Parent representative in a similar § 1782 proceeding in Illinois. It points out that the subpoenas issued to LMC are identical to those issued by Venequip to Cat Parent and other Cat dealers, and it argues that this shows the subpoena is not narrowly tailored to discovery of information specific to LMC or to Venequip's claims in the Swiss Proceeding. LMC adds that it has manually searched 3,203 serial numbers over a ten year period and determined that not one involved a sale to a customer in Venezuela. It says that it searched all of its customer information files "to see if any of Venequip's search terms matched" its customers—but no matches were found.

LMC argues that the requests are facially overbroad by seeking 10 years of information in 28 categories in a geographic region to which LMC has no connection. It argues that the definitions of Agreements, Distribution Agreements, Sales and Service Agreement, Communications, and

Invasion Fees are so broad they extend to matters that would be unrelated to any sales to Venezuela. It further argues that Venequip's use of terms like "any and all" is overbroad and unduly burdensome. It argues that the request is also duplicative of the myriad of other subpoenas Venequip has served across the country. It also argues that the subpoena seeks confidential commercial information that is entitled to protection.

In reply, Venequip argues that LMC's search was insufficient because it excluded the SIS Database specifically identified in the subpoenas and discussed in the parties' conferences.[7] The database searched by LMC does not include information about third party re-sales of equipment or parts by customers to third parties. Venequip submits that LMC has ignored the subpoenas in all material respects.

Venequip argues that the subpoenas are not unduly burdensome. It says the 10 year period is appropriately narrow because it may seek 10 years of damages in the Swiss Proceeding. It submits that its search terms and serial numbers also help narrow the requests. It adds that it is willing to enter into a protective order to preserve the confidentiality of any of LMC's confidential commercial information.

Venequip also argues that LMC has waived its right to challenge the issuance of the §1782 subpoenas. In any event, Venequip insists LMC's challenge of the §1782 application cannot succeed on the merits. It argues that it is not seeking to abuse §1782, noting that it has worked together to meet and confer with LMC. It argues that it has no choice but to serve multiple § 1782 subpoenas because Caterpillar equipment is sold through a patchwork of independently owned and operated Cat dealers across the globe. It submits that it is not seeking unreasonably duplicative discovery.

---

[7] LMC submitted a declaration with its memorandum in which Jason Maurin, Chief Financial Officer of LMC, describes the search performed on the "dealer system database that runs on the IBM AS/400 application system."

Venequip further argues that the discovery sought is outside the jurisdiction of the Swiss tribunal because LMC is not a party to those proceedings. It adds that, in any event, it is not required to first attempt to obtain discovery in the foreign proceeding. It insists that the statute is meant to provide an efficient means of assistance to litigants abroad. Venequip adds that Swiss courts are routinely receptive to §1782 evidence. And it argues that it is not seeking to sidestep Swiss procedural rules that do not allow discovery at this stage of the proceedings. It argues that it is not required to show discoverability or admissibility in the foreign forum.

In its reply, LMC responds that its database contains all records of its current inventory, past inventory and sales of inventory, and customer information files. It submits that its searches confirmed that it made no sales in Venezuela and has no customers in Venezuela and, therefore, lacks any connection to Venezuela or the Swiss Proceeding. It insists that it cannot produce any documents for Venezuela sales because there are none. As to third-party sales, it insists that it does not maintain any records regarding third-party resales and is not excluding such documents. Similarly, LMC insists it does not maintain records regarding sales by other dealers.

With regard to the proposed searches of the SIS Database, LMC argues that this database is maintained by Cat Parent and that it is not authorized to access the database on behalf of Venequip. It cites this court's decision in Dotson v. Edmonson, where the court held that employees could not be required to produce their employer's records. No. CV 16-15371, 2017 WL 4310676, at *5-6 (E.D. La. Sept. 28, 2017). Even if it did have possession or control over the SIS Database, LMC argues that it should be protected from discovery as a non-party and the discovery should be sought through Cat Parent.

LMC also argues that its motion is timely and this court has authority to grant its requested relief. It points out that it timely asserted its objections and reiterated them throughout the meet

and confer process. It points out that the court stated that it would not be precluded from calling any of the discretionary factors into question. It adds that the order was issued ex parte and that this is its first request for judicial relief. Further, it argues that this court has the inherent authority to grant relief that justice requires. And it argues that it only developed its lack of connection with Venezuela through the meet and confer process so that these arguments could not have been raised earlier.

Finally, LMC argues that the cases cited by Venequip in support of the discretionary factors can be distinguished. It submits that Venequip simply wants to avoid the Swiss procedural requirements for obtaining the discovery it now seeks. It argues that the timing of the §1782 applications, filed days after initiating the Swiss Proceeding and well before discovery could be had there, is suspect. It contests Venequip's argument that its approach is efficient. Instead, it insists that the most efficient path for obtaining the discovery would be through Cat Parent.

In sur-reply, Venequip says that LMC has not previously claimed that it does not have authority to access the SIS Database on behalf of Venequip. It argues that LMC has waived the argument. In any event, Venequip argues that this case differs from Dotson. Unlike the employee-employer relationship there, Venequip argues that here, the Cat Dealer network is more like the network of independent sport franchises and sports leagues considered in Benson v. Rosenthal, where the court ordered Tom Benson, the owner of the New Orleans Saints and the New Orleans Pelicans, would be required to produce league documents even absent league consent. 15-782, 2016 WL 1046126 (E.D. La. Mar. 16, 2016). Venequip argues that here, LMC is a member of a network of Cat affiliates with access to the SIS Database. It insists that LMC has control over the information in that database. It cites cases where courts found that a distributor of a third-party affiliate's products was in control of discovery possessed by that third-party affiliate. Alcan Int'l

Ltd. v. S.A. Day Mfg. Co., 176 F.R.D. 75, 78 (W.D.N.Y. 1996); Cooper Indus., Inc. v. Brit. Aerospace, Inc., 102 F.R.D. 918, 919–20 (S.D.N.Y. 1984). Venequip argues that the fact that LMC and Cat Parent have no common ownership does not change the analysis here.

At oral argument, Venequip focused on obtaining information from the SIS Database, such as the buyers of any re-sold equipment. The court repeatedly asked Venequip to explain what information it sought from LMC other than the information in the SIS Database. Venequip finally referenced the LMC agreements and any LMC policies regarding out-of-territory sales generally, and communications where the identified serial numbers are mentioned. With regard to the agreements, LMC insisted that they are highly confidential and cannot be produced. As to the remaining information, LMC argued that it should not be burdened with such searches and production when it has already searched its own files for the serial numbers and the alleged resellers and has found no evidence of sales to Venezuela.  With regard to the burden, Venequip offered to pay for a technician to perform searches and bear the costs.

Following oral argument, Venequip sought to file a supplemental  memorandum.[8] It suggests this court defer ruling on the SIS Database issue for 45-60 days while the same discovery plays out in other venues. It also requests the court set a status conference to further discuss additional LMC-specific discovery that LMC could be required to produce. It submits that an amicable solution could be reached because it will accommodate LMC's cost concerns. Despite its suggestion that it seeks only LMC specific discovery, much of its proposed supplemental memo is devoted to what it hopes to obtain from the SIS Database. It also presents a declaration of a

---

[8] It suggests that limited time was available for the hearing. To the contrary, the hearing lasted almost a full hour. The hearing ended when the court had heard the parties' arguments and the parties had answered the court's questions. No party requested additional time or suggested that they needed to present additional information to the court.

Swiss Law expert to counter the expert opinion attached to LMC's motion to vacate without any explanation for why it failed to present this opinion when opposing the motion.

LMC opposed Venequip's request to file the supplemental memorandum. It argues that even in Venequip's fourth brief on this issue, it has still failed to identify a single LMC-specific document that it can justify pursuing. It submits that by requesting a 60 day delay, Venequip demonstrates that its prior claims of urgency were exaggerated.  It notes that LMC previously suggested that Venequip defer the subpoena while it pursued discovery from Cat Parent and adds that Venequip has offered no justification for the belated nature of its request for this court to do so now, when that option was previously rejected when proposed by LMC. It further argues that Venequip has had a wholly adequate opportunity to address the court on the issues and offers nothing that was unavailable before.

<u>Law and Analysis</u>

*1. Section 1782*

This court is authorized by statute to order a person that resides or is found in this district to give testimony or product documents or other things "for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a). When the statutory elements have been satisfied, the court considers the following discretionary factors in assessing an application for issuance of a §1782 subpoena: (1)"when the person from whom discovery is sought is a participant in the foreign proceeding [], the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad"; (2) "a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-

court judicial assistance"; (3) "a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) "unduly intrusive or burdensome requests may be rejected or trimmed." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 265 (2004).

"[I]f the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation." Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1101 n. 6 (2d Cir. 1995).

2. *Waiver*

Section 1782 does not impose a deadline by which a subpoenaed party must object to the issuance of the subpoenas. However, at least one court has found waiver on the basis of untimeliness by reference to the deadline for objections provided for subpoenas issued pursuant to Federal Rule of Civil Procedure 45. In re Iraq Telecom Ltd., No. MC 19-175, 2021 WL 5177603, at *2 (E.D. Pa. Nov. 5, 2021). In Iraq Telecom, the court authorized §1782 subpoenas to be issued to an accounting firm concerning alleged fraud perpetrated by its clients. Id. at *1. Counsel for the clients appeared in the proceeding to protect their privilege rights, but did not object to the §1782 application or move to quash or vacate the court's order granting it. Id. Instead, they made several productions of documents. Id. A year and a half after counsel for the clients appeared, the clients argued in response to a motion to compel that the applicant had not met the requirements of §1782. Id. at *2. Noting the expiration of the time for compliance with the subpoena—which had directed the accounting firm to respond within one month—the court held that the arguments were untimely and had been waived. Id.

### 3. *Analysis*

The court declines to find that LMC has waived its ability to challenge the court's §1782 order. LMC's December 13, 2021, objections timely objected to the subpoenas on numerous grounds—including to the issuance of the subpoenas by asserting in those original objections that the discretionary factors of §1782 had not been met. It also asserted that most of the information was not in LMC's possession at all or also in the possession of Cat Parent and/or Swiss Cat. Although LMC conferred with Venequip in an apparent good faith attempt to resolve the parties' dispute for about six weeks thereafter, this does not result in waiver of its objections—just as Venequip has not waived its right to enforce the subpoenas by working to negotiate an amicable resolution.

The court now turns to the §1782 application. There is no dispute that the statutory requirements of §1782 have been met. The court considers each of the discretionary factors below.

### a. *Whether the discovery is accessible in the Swiss Proceeding*

The first discretionary factor identified by the Supreme Court in Intel was whether the person from whom the discovery is sought is a participant in the foreign proceeding. 542. U.S. 241. If so, the foreign jurisdiction could order the person to produce evidence and the need for a §1782 subpoena would be less apparent. Id.  Some courts have interpreted this factor as requiring consideration of "whether the material is obtainable through the foreign proceeding." In re Jud. Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd., No. 2:14-CV-00797-GMN, 2015 WL 3439103, at *6 (D. Nev. May 28, 2015); see In re Ex Parte LG Elecs. Deutschland GmbH, No. 12CV1197-LAB MDD, 2012 WL 1836283, at *2 (S.D. Cal. May 21, 2012); In re Microsoft Corp., 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006), abrogated by In re del Valle Ruiz, 939 F.3d 520 (2d Cir. 2019); In re Degitechnic, No. C07-414-JCC, 2007 WL 1367697, at *4 (W.D. Wash. May

8, 2007). Importantly, though, §1782 does not impose an exhaustion requirement:  courts may compel discovery even where the information is also in the possession of a parent company subject to the foreign proceeding. In re Top Matrix Holdings Ltd., No. 18 MISC. 465 (ER), 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020); see Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1098 (2d Cir. 1995) (quoting Application of Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir. 1992) ("[T]his Court has also refused to engraft a 'quasi-exhaustion requirement' onto section 1782 that would force litigants to seek 'information through the foreign or international tribunal" before requesting discovery from the district court.'")).

Here, there is no dispute that LMC is not a party to the Swiss Proceeding. However, LMC contends that some or all of the sought after information could be obtained from Swiss Cat, a party to the Swiss Proceeding. Indeed, Venequip asserts that the SIS Database is  maintained by Swiss Cat or Cat Parent. LMC also points out that Venequip is actively seeking this same information from Cat Parent directly through a similar §1782 proceeding in Illinois. Cat Parent has agreed to provide the information to Swiss Cat in the Swiss Proceeding.

In response, Venequip submits that LMC is inconsistent in arguing both that the information is in the possession of Swiss Cat and being provided to Swiss Cat by Cat Parent. The court finds no inconsistency as information might be presently in Swiss Cat's possession or available to Swiss Cat in the future.

Venequip also argues that it is not required to first seek the discovery in the Swiss Proceeding.  That is true, however, the court is permitted to consider whether the information is available in the Swiss Proceeding.

The court finds that information in the SIS Database information is likely to be accessible to Swiss Cat in the Swiss Proceeding because Cat Parent has agreed to cooperate in making the

information available there. However, that information will not be made available in the Swiss Proceeding until the discovery or taking of evidence phase, which will begin after Venequip is required to file its statement of claim.[9] Venequip would like and could use the information before that time. On balance, the court finds this factor weighs slightly in favor of allowing the subpoena.

     *b.  The nature of the Swiss Proceeding and receptivity to U.S. federal court assistance.*

     There appears to be a circuit split as to who bears the burden to show that the foreign tribunal would be receptive to the proposed discovery. The Third Circuit has placed the burden of persuasion on the party resisting discovery. In re Biomet Orthopaedics Switzerland GmBh, 742 F. App'x 690, 697 (3d Cir. 2018); see Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1100 (2d Cir. 1995) ("[A] district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782."). But courts in the Ninth Circuit have placed the burden on the requesting party to show that the foreign court would welcome the discovery. In re Cathode Ray Tube (CRT) Antitrust Litig., No. 07-5944 SC, 2012 WL 6878989, at *2 (N.D. Cal. Oct. 22, 2012), report and recommendation adopted, No. C-07-5944-SC, 2013 WL 183944 (N.D. Cal. Jan. 17, 2013).

     LMC argues that Venequip has failed to establish that the Swiss tribunal would be receptive to the discovery, pointing out that Venequip cites only criminal cases to support its proposition that Swiss courts are generally receptive to §1782 information. It cites the declaration of Dr. Nicolas Jeandin, a law professor at the Geneva Law School, who describes Swiss court procedure. Dr. Jeandin asserts that evidence cannot be taken until a party requests that the Swiss court do so and the court then acts through official channels to collect evidence. This occurs after a rigorous

---

[9] As discussed in Section 3.b below, LMC has submitted a declaration regarding Swiss court procedure.

preliminary proceeding that specifies exactly what facts are in dispute and legally relevant, and only evidence that bears on those facts will be accepted.

In reply, Venequip cites civil cases where Swiss tribunals have been receptive to §1782 discovery or where federal courts have found no evidence that Swiss courts would not be receptive to assistance.  E.g., Request from Dist. Ct. of Lugano , Switzerland for Info. from Oath Holdings, Inc., No. 19-MC-80208-VKD, 2019 WL 4040552, at *1 (N.D. Cal. Aug. 26, 2019) (where the United States, on behalf of a Swiss court, filed an application for a §1782 order authorizing subpoenas in connection with a civil proceeding concerning unauthorized transfer of funds); Chubb Ins. Co. of Eur. SE v. Zurich Am. Ins. Co., No. 1:09-MC-0116, 2010 WL 411323, at *6 (N.D. Ohio Jan. 28, 2010) (finding no indication that the Swiss court would be unreceptive to assistance).

Although the Request from District Court of Lugano case shows that Swiss courts are comfortable using §1782, the case offers little guidance here:  it did not involve discovery sought before the evidence gathering stage of a Swiss proceeding. The Chubb Insurance case offered no analysis of Swiss admissibility standards—it simply found no basis to hold the court would be unreceptive. As to LMC's evidence regarding Swiss procedures, the court finds that it does not call into question whether the Swiss tribunal would *accept* the evidence. Instead, it raises questions about whether Venequip's attempts to obtain this evidence at this stage of the proceeding circumvents the Swiss process. That factor is considered below. Neither side has highlighted whether the particular documents or testimony sought here would be admissible in the Swiss Proceeding. The court finds the nature of the foreign proceeding and the likelihood that the Swiss tribunal would be receptive to the evidence is neutral and weighs neither in favor of nor against their issuance.

17

c. *Whether Venequip is attempting to circumvent any discovery restrictions.*

Although exhaustion of the foreign tribunal's discovery procedures is not a prerequisite to §1782 relief, "a perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." In re Application of Gilead Pharmasset LLC, No. CV 14-MC-243 (GMS), 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015) (quoting In re Cathode Ray Tube (CRT) Antitrust Litig., No. C-07-5944-SC, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013)); see Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada, 384 F. Supp. 2d 45, 54 (D.D.C. 2005) ("The Court is wary of granting discovery under § 1782 when it appears that the party seeking discovery may be using the United States statutes and federal court system to "jump the gun" on discovery in the underlying foreign suit.").  In Gilead, for example, the court found the petitioner's "lack of interest in pursuing any discovery under the laws" of the foreign proceeding "indicates an attempt to circumvent those rules." 2013 WL 183944, at *3.

Courts may also consider the parties' choice of law and forum. Just days ago, the Northern District of Illinois denied Venequip's application for issuance of a subpoena under §1782 primarily on the grounds that the third Intel factor weighed strongly in favor of denial. In re Application of Venequip, S.A., No. 21-6297, ECF # 22 (N.D. Ill. Mar. 18, 2022). The court highlighted that the contracts between Venequip and Swiss Cat require that any disputes arising out of or related to the contracts be resolved in a Swiss forum and under Swiss law. Id.  at 3. The court observed that Swiss and U.S. procedural law differ significantly and found that the parties to the contract must have known that. Id. The court concluded that the reason Venequip is precluded from obtaining "robust early discovery" is because of its agreement to handle disputes in a Swiss forum. Id.

Recognizing that Intel does not require exhaustion of remedies, the court found that the parties' choice-of-law and forum-selection agreement remained important. Id. at 3-4.

But courts have also recognized a difference between a request that seeks documents that cannot be obtained "because the foreign jurisdiction does not provide a *mechanism* for such discovery, and one that seeks documents that cannot be obtained because the foreign jurisdiction *prohibits* the discovery of those documents." Maxell, Ltd. v. Apple Inc., No. 5:19-CV-00036-RWS, 2021 WL 3012355, at *4 (E.D. Tex. Jan. 27, 2021) (quoting In re Accent Delight Int'l Ltd., 791 F. App'x 247, 251 (2d Cir. 2019)). In Maxell, for example, the court found the third factor weighed in favor of allowing the discovery of materials that were not prohibited by the foreign court, but which the petitioner could not require the respondent to produce in the foreign proceedings. Id.; see Ecuadorian Plaintiffs v. Chevron Corp., 619 F.3d 373, 378 (5th Cir. 2010) (finding that the information was not shielded from discovery where the discovery would not be available to the applicant in the foreign proceeding, but the respondent had not shown "any 'judicial, executive or legislative declaration' that clearly demonstrates that allowing discovery in this case would offend Ecuadorian judicial norms").

According to LMC, Venequip and Swiss Cat are presently in "conciliation," as required by Swiss procedures. It argues that Venequip has not even attempted to use the Swiss discovery mechanisms. It submits that this is because the Swiss tribunal would reject such a request because evidence cannot be taken during the preliminary-proceeding stage. It insists that Venequip's application is a plain attempt to circumvent foreign proof gathering restrictions. It points out that Venequip agreed to be bound by Swiss law when it entered into its distribution agreement.

Venequip submits that LMC's arguments do not establish that Venequip has failed to satisfy the third Intel factor. It argues that it is not required to exhaust discovery procedures in the

Swiss proceedings. It insists that Swiss litigation is reasonably anticipated and that §1782 contemplates the assistance Venequip now seeks.

The court finds that Venequip is circumventing Swiss procedure, which would not allow discovery at this stage. As noted by the Northern District of Illinois, Venequip agreed to be bound by these Swiss procedures in choosing a Swiss forum and Swiss law to govern its agreements with Swiss Cat. Yet the court recognizes that Venequip is not required to exhaust the Swiss tribunal's procedures before seeking a §1782 subpoena. Although Swiss courts would not allow use of their procedures to obtain discovery at this time, there is no indication that Swiss courts prohibit parties from conducting whatever investigation they can without the involvement of the Swiss court or its powers to compel discovery. This factor does not preclude the issuance of the subpoenas, however, the court finds it weighs against their issuance.

### d. Whether the requests are intrusive or unduly burdensome.

Courts have applied the Federal Rules of Civil Procedure when assessing the scope of discovery sought. E.g., Texas Keystone, Inc. v. Prime Nat. Res., Inc., 694 F.3d 548, 554 (5th Cir. 2012); In re Time, Inc., MISC. ACTION NO. 99-2916 SECTION "C" (2), 1999 U.S. Dist. LEXIS 15858, at *20 (E.D. La. Oct. 6, 1999). Thus, the court will employ the usual relevance and proportionality analysis required by Rule 26[10] and the undue burden analysis of Rule 45.[11]

---

[10] The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. The Rule requires consideration of the following factors in assessing proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

[11] Under Rule 45, the Court may quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception of waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. Proc. 45(d)(3); see Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 817–18 (5th Cir. 2004). The moving party bears the burden of showing that compliance with the subpoena would be unduly burdensome. Wiwa, 392 F.3d at 818; Informd, LLC v. DocRX, Inc., No. MC 16-83-JJB-EWD, 2016 WL 7478962, at *3 (M.D. La. Dec. 29, 2016).

At oral argument, Venequip's counsel asked the court to consider its requests in two buckets. One is the information in the SIS Database, which is maintained by Cat Parent and accessible to LMC as well as other Cat dealers. The other is information that is only in LMC's possession.

LMC argues that it does not have authority to use the SIS Database to pull information for Venequip. Venequip disputes this characterization. It argues that LMC can be compelled to access and produce information from the SIS Database because LMC and Cat Parent maintain a transactional relationship in furtherance of which they share information through the SIS Database.

For purposes of determining whether LMC can be compelled to produce information from the SIS Database, the court focuses on whether the information is within LMC's possession, custody, or control. See Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 821 (5th Cir. 2004); Sarl v. Samsung Telecommunications Am. LLC, No. 13-MC-0008-P, 2014 WL 12776170, at *2 (N.D. Tex. Apr. 1, 2014). Importantly, "mere access is not possession, custody, or control." In re Grand Jury Subpoena, 646 F.2d 963, 969 (5th Cir. 1981). Courts have defined "control" as "the legal right, authority or ability to obtain documents upon demand." U.S. Int'l Trade Comm'n v. ASAT, Inc., 411 F.3d 245, 254 (D.C. Cir. 2005) (quoting Camden Iron & Metal, Inc. v. Marubeni Am. Corp., 138 F.R.D. 438, 441 (D.N.J. 1991)); see Searock v. Stripling, 736 F.2d 650, 653 (11th Cir. 1984) ("Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand.")). As noted by LMC, this court has previously held that employees could not be compelled to produce their employer's documents that they only had access to for purposes

---

In assessing the undue burden, the Court considers "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." Wiwa, 392 F.3d at 818. Where a non-party is subject to a subpoena, "the court may also consider the expense and inconvenience to the non-party." Wiwa, 392 F.3d at 818.   The Court should also consider whether the requested information is available from any other source. Positive Black Talk Inc. v. Cash Money Records, Inc., 394 F.3d 357, 377 (5th Cir. 2004) abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010).

of their work for the employer. <u>Dotson</u>, 2017 WL 4310676, at *6. In contrast, another section of this court has found that the plaintiff owner of a sports franchise would be required to produce documents that he described as the sports franchise league's documents if he actually possessed, controlled, or had the legal right or practical ability to obtain the documents, even if the league did not consent to production. <u>Benson</u>, 2016 WL 1046126, at *4. The <u>Benson</u> court explained that "[f]actors to consider in determining whether a party has 'control' of materials include 'whether the litigant...could secure materials from [a] nonparty corporation to meet its own business needs, and whether, by virtue of stock ownership or otherwise, one...effectively controls the other.'" 2016 WL 1046126, at *4 (quoting § 2210 Possession, Custody, or Control, 8B Fed. Prac. & Proc. Civ. § 2210 (3d ed.)).

Indeed, in the cases cited by Venequip, parties were ordered to produce documents belonging to closely affiliated companies. For example, in <u>Cooper Indus., Inc. v. Brit. Aerospace, Inc.</u>, the plaintiff sought documents (service manuals and blueprints) regarding planes sold and serviced by the defendant, but which were manufactured by a British affiliate of the defendant. 102 F.R.D. 918, 919 (S.D.N.Y. 1984). The defendant had been wholly owned by the British affiliate at the time suit was filed. <u>Id.</u> At the beginning of the lawsuit, defendant's counsel had instructed plaintiff to seek documents from the British affiliate through him. <u>Id.</u> The court found "[t]he documents plaintiff seeks all relate to the planes that defendant works with every day; it is inconceivable that defendant would not have access to these documents and the ability to obtain them for its usual business." <u>Id.</u>  at 919-20. Similarly, in <u>Alcan International Ltd. v. Day Manufacturing Co.</u>, the plaintiff was the exclusive distributor of certain products that were manufactured by a foreign company. 176 F.R.D. 75, 79 (W.D.N.Y. 1996). Both the plaintiff distributor and the foreign manufacturer were corporate members of a "unified worldwide business

entity" under the common control of a Belgian entity. Id.  The unified worldwide business entity issued an annual consolidated financial report. Id. The court ordered the plaintiff to produce testimony and documents reflecting the chemical components and manufacturing process, concluding that it was inconceivable that the distributor did not have access to this information or the ability to obtain it for purposes of the lawsuit and for conducting its business. Id. Of note, both Cooper and Alcan involved parties to the United States litigation.

Here, there appears to be no dispute that LMC has access to the SIS Database for the purpose of conducting its own business. LMC has identified no contractual limit or other obligation that proscribes particular uses of the SIS Database. Nonetheless, the parties also seem to agree that the SIS Database is owned and maintained by Cat Parent. Although LMC distributes Cat products, there is no evidence that it is an affiliate of Cat Parent or Swiss Cat, that it shares any common ownership, or that it is in any way under common control. It is not even clear which of these companies LMC has contracted with. Further, LMC does not appear to be an exclusive distributor—Venequip has identified six other dealers in the United States, whose equipment ended up in Venezuela. Others may exist. Although Venequip argues that common ownership is unnecessary to find that one entity can be required to produce another entity's documents, it points to no case law to support this assertion. And unlike in Cooper and Alcan, LMC is not a party to the litigation that might use the SIS Database information offensively such that prohibiting an opponent from obtaining the same information would be unfair. The court cannot conclude that LMC and Cat Parent have the type of relationship that would entitle LMC to use the records of the SIS Database for whatever purpose.

Regardless of whether LMC has possession, custody, or control of the SIS Database information, the court finds that given LMC's tangential (if any) connection to Venequip's

allegation of sales into Venezuela, it would be unduly burdensome to require LMC to undertake the task of searching for and producing information from the SIS Database. LMC has already searched its own customer records and has zero sales to Venezuela. Specifically, it manually entered and searched its own records for 3,203 serial numbers provided by Venequip, a process that took an entire week and dozens and dozens of hours diverted from LMC's operations. Not one of the serial numbers resulted for a sale to a customer in Venezuela. It searched its customer information files for the first 23 search terms sent by Venequip—including Venezuela,[12] and found zero hits except for the term "export!" which resulted in hits that had no relation to Venezuela.[13] LMC's searches seem to demonstrate that LMC has no connection to the dispute between Venequip and Swiss Cat. In addition to the searches, LMC has engaged in conferences to discuss its objections and Venequip's requests, has been required to file voluminous briefing, appear in court, and participate in lengthy oral argument. LMC is a third-party and the court must take particular care to minimize its burden. LMC has already undertaken a significant burden and given the lack of connection to the dispute, the court will not require LMC to conduct searches in the SIS database on Venequip's behalf—even if Venequip compensates LMC for their efforts or hires an expert to perform the searches.

The court adds that Venequip is not foreclosed from obtaining the SIS Database information elsewhere. Although it will not be able to obtain the information from Cat Parent at this time in light of the ruling of the Northern District of Illinois, that court observed that Venequip would be able to obtain the information it sought during the Swiss Proceeding because Cat Parent had agreed to provide discovery ordered by the Swiss tribunal through its subsidiary Swiss Cat.

---

[12] Venequip's first email with search terms on January 20, 2022, listed 23 search terms. A follow up email on January 26, 2022, listed additional terms. Rec. Doc. 9-12, at 1, 4. It appears that the 23 terms in the first email were searched. Maurin Decl., Rec. Doc. 13-2, at 3-4.
[13] Maurin Decl., Rec. Doc. 13-2, at 4.

The court next considers what Venequip has described as the second bucket of information—information that is in the sole possession of LMC. As discussed above, LMC has already complied to an extraordinary degree, running at least 23 search terms and manually entering and searching for 3,203 serial numbers. Despite repeated requests at oral argument, Venequip has not identified with particularity what additional documents it believes are contained in this bucket—not even in its proposed post-hearing memorandum in which it asks the court to allow it to continue pursuing such discovery from LMC. It refers vaguely to LMC's policies, communications, and documents. It says it is willing to make accommodations to mitigate or eliminate LMC's cost concerns.  The court appreciates this offer. But the fact remains that there is no evidence that LMC was involved in any way with the sale of Cat products into Venezuela. Venequip admits that it has only identified two to four serial numbers of equipment that originated with LMC, but LMC's searches reveal that it sold this equipment in Louisiana. LMC's own files show no equipment was sold directly into Venezuela. The court finds that because there is only a tangential, if any, connection between LMC and the facts giving rise to Venequip's claim, there is no basis to conclude that further searches of LMC's documents would lead to any relevant or responsive information. Under the circumstances, the court will not require LMC to undertake any further burden—including participating in a status conference or opening its files to an expert retained by Venequip.

<u>Conclusion</u>

Because LMC has already provided significant cooperation, even though LMC's relationship to Venequip's claims is, at best, tangential, the court finds that it would be unduly burdensome to require LMC to search for or produce any further information in response to the

Subpoenas. Accordingly, Venequip's Motion to Compel is DENIED. LMC's Motion to Quash the Subpoenas is GRANTED.[14]

     New Orleans, Louisiana, this 21st day of March, 2022.

                              Janis van Meerveld
                        United States Magistrate Judge

---

[14] LMC's alternative requests for relief—that the §1782 order be vacated or a protective order be issued—are moot.